■ In the Matter of WILLIAM F. McINTOSH, Respondent, v STATE OF NEW YORK et al., Appellants. [776 NYS2d 381]—

Cardona, P.J. Appeal from a judgment of the Supreme Court

---

(Keegan, J.), entered September 19, 2002 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to direct respondents to award full back pay, benefits and emoluments of employment to petitioner resulting from his discharge from the position of Chief of Staff within the State Division of Military and Naval Affairs.

An understanding of this complicated litigation can only be gained through recitation of a portion of its extensive history. Petitioner, now retired, was formerly a colonel in the New York Army National Guard (hereinafter NYARNG), considered to be federal employment. In 1986, while still holding that rank, petitioner was appointed to the civilian position of Chief of Staff within the Division of Military and Naval Affairs (hereinafter DMNA), a state agency.[1] In February 1987, petitioner's superior, Adjutant General Lawrence Flynn, recommended that petitioner be promoted to Brigadier General. Flynn then sought the required federal recommendation of the appointment from the United States Department of the Army. However, by means of a "Report for Suspension of Favorable Personnel Actions," the promotion was held in abeyance pending the results of an investigation for "suspected improprieties." According to petitioner, a charge of corruption was made against him in retaliation for his refusal to reveal his testimony before a grand jury investigating fellow NYARNG officers. The investigation against petitioner was ultimately closed without any finding of wrongdoing. Nevertheless, the promotion was not implemented and, by military order No. 119-030 dated June 21, 1988, petitioner was relieved of his Chief of Staff position and transferred from active status in the NYARNG to the Inactive National Guard (hereinafter ING; see Military Law § 49), ostensibly for the purpose of ensuring that petitioner could not be accused of using his position to influence an investigation by the State Inspector General's office.[2] At the same time, petitioner was demoted to a lower-paying position within the State Emergency Management Office (hereinafter SEMO), which became permanent in September 1988.

Thereafter, on October 10, 1990, petitioner turned 55 years

---

1. Petitioner's title was originally referred to as "Adjutant General" and his superior officer was called the "Chief of Staff." However, in 1988, the title "Adjutant General" under Military Law § 13 was renamed "Chief of Staff," and the title "Chief of Staff" under Military Law § 11 was renamed "Adjutant General" (see L 1988, ch 141).

2. There is some question as to whether such an investigation was formally in progress at the time of petitioner's transfer. A file in the record indicates that an investigation was commenced in February 1990 and closed in June 1993.

old and was required, as a colonel, to retire from NYARNG and be transferred to the retired reserve in accordance with then-applicable federal law.[3] This was reflected in military order No. 203-019 dated October 19, 1990. In November 1990, petitioner commenced an action in Supreme Court against certain state respondents seeking damages as a result of, inter alia, the withdrawal of his promotion and transfer to the ING. Supreme Court (Williams, J.), found, inter alia, that federal departments also needed to be joined in the action and dismissed the complaint "without prejudice to renew[ ] the claims in a court of competent jurisdiction and serv[e] all necessary parties."

Petitioner thereafter pursued federal administrative remedies including making an "[a]pplication for the Correction of Military Record" in June 1991. Following various delays, the Army Board for Correction of Military Records (hereinafter ABCMR), in June 1998 and October 1999 decisions, concluded, inter alia, that petitioner's removal from the Chief of Staff position was improper and his involuntary transfer to the ING was in violation of a National Guard regulation stating that officers under a suspension of favorable personnel action are not eligible for said transfer. The ABCMR also noted that it had no authority to correct state records, but indicated that it would be in the interest of justice for petitioner's state NYARNG records to be similarly corrected and, furthermore, that he receive "back pay and allowances that he would have received had he not been transferred to [ING] and subsequently discharged." In October 1999, the Secretary of the Army, upon the recommendation of the ABCMR, ordered petitioner's federal Department of the Army records to be corrected to show "that [petitioner] was placed on the Retired List at age 60 in the rank of [Brigadier General] effective on 10 October 1995 and paying him the back pay to which he is entitled under Federal law."

In March 2000, petitioner wrote to John Fenimore, Flynn's successor as Adjutant General, and requested, inter alia, correction of his state records, reinstatement to the position of DMNA Chief of Staff and "[p]ayment of the difference . . . between the salary [he] received as an employee of the [SEMO] and the salary [he] would have received . . . as the Chief of Staff DMNA." On July 14, 2000, Fenimore indicated that the matter was being researched and petitioner could "expect a detailed response within the next two to three weeks." Subsequently, in a letter dated March 16, 2001, Fenimore stated that petitioner's re-

---

**3.** The record establishes that if petitioner was promoted to Brigadier General, he would not have been required to retire until attaining 60 years of age in the year 1995.

moval from the DMNA Chief of Staff position in December 1988 was discretionary and could not be overturned.

Thereafter, petitioner filed a notice of petition on July 12, 2001, requesting "full back pay, benefits and emoluments of employment as the position of Chief of Staff would have entitled petitioner from June 20, 1988 through November 9, 1995," as well as an appropriate adjustment to his retirement benefits. Respondents moved to dismiss. Supreme Court (Keegan, J.) found, inter alia, that certain of petitioner's claims were untimely, and it otherwise denied the motion. Respondents filed an answer in March 2002 that included an affidavit from Peter Colloton, the DMNA Director of Military Personnel, who noted that military orders had been issued and petitioner's state military records had been corrected "in accord with the direction of the ABCMR." Petitioner had not previously received copies of the military orders, dated August 26, 1998, from the State Adjutant General's office reflecting these changes.[4] Among them were military order Nos. 238-008 and 238-010, which revoked military order Nos. 119-030 and 203-019, respectively. Additionally, military order Nos. 238-011 and 238-012 provided for petitioner's promotion to Brigadier General, effective June 20, 1988 and for his retirement, effective October 10, 1995.

Upon review of these orders, petitioner renoticed his petition asserting a new cause of action alleging, inter alia, that given DMNA's August 1998 revocation of military order No. 119-030, the DMNA had already granted the majority of his requests and it was arbitrary and capricious for it to deny him the remainder of his requested relief in March 2001. Given the circumstances surrounding the new information provided by respondents, Supreme Court permitted the amendment. The court concluded that respondents' March 16, 2001 refusal was arbitrary and capricious and directed respondents to provide petitioner with back pay for the DMNA Chief of Staff position and other associated benefits for the period from June 1988 until October 10, 1995. Respondents appeal.

Initially, we agree with Supreme Court's determination that the subject issues are not barred on timeliness grounds. It is clear that, as acknowledged by respondents, petitioner's challenge, as clarified by the renoticed petition, is not from the original determination demoting him in December 1988. Instead, petitioner is challenging the rationality of respondents' March 2001 refusal to comply with his March 2000 request for favorable action in light of, inter alia, respondents' issuance of cor-

---

**4.** Petitioner assumes that he did not receive copies when they were originally issued in 1998 because he was discharged from service at that time.

rective military orders in August 1998. Consequently, the matters currently before this Court for resolution are not untimely.

Next, respondents claim that Supreme Court abused its discretion by allowing petitioner to amend the petition. We do not agree. " 'A party may amend his pleading . . . at any time by leave of court' and that '[l]eave shall be freely given upon such terms as may be just' " (*Murray v City of New York*, 43 NY2d 400, 404 [1977], quoting CPLR 3025 [b]). Here, petitioner amended his petition to reflect the facts brought forth through Colloton's affidavit, which established that respondents had revoked the order that transferred petitioner to the ING and had retroactively promoted petitioner to Brigadier General in accordance with the recommendations of the ABCMR. Since this proof was already in respondents' possession, they cannot successfully argue that they were prejudiced by the renoticed claim. Furthermore, in reference to prejudice, respondents contend that Supreme Court abused its discretion by allowing petitioner to submit additional affidavits even though the parties and Supreme Court had agreed that the filing of additional affidavits would be prohibited. However, petitioner disputes that such an agreement existed and, although respondents raised that issue before Supreme Court, no ruling in their favor ensued. Clearly, Supreme Court was in a better position to resolve the attorneys' conflicting recollections. In any event, it appears that respondents had sufficient opportunity to respond through a letter brief.

Turning to the merits, respondents raise several arguments challenging Supreme Court's ruling that the administrative relief obtained by petitioner formed a sufficient basis for the award of back pay, benefits and emoluments. Initially, respondents maintain that the military orders they issued in 1998 could not be construed as revoking or otherwise affecting petitioner's removal from the DMNA Chief of Staff position in 1988 because, inter alia, the "Chief of Staff" position referred to in military order No. 119-030 actually was an unrelated federal position. Alternatively, they argue that, even if the order did refer to that position, it is apparent from the language of military order No. 238-008 that it only rescinded that part of military order No. 119-030 which transferred petitioner to the ING and did not affect that part relieving him from the Chief of Staff position. Therefore, since they maintain that the dismissal from the DMNA Chief of Staff position remained intact, they contend that it was a nonreviewable exercise of military discretion (*see Wenger v Monroe*, 282 F3d 1068 [2002]).

On the other hand, petitioner sets forth an equally compel-

ling claim that military order No. 119-030 encompasses the DMNA position. Furthermore, petitioner provides proof, including an affidavit from a military expert and the provisions of a national guard regulation governing preparation of military orders, which indicates that the language of military order No. 238-008 effectively revoked *all* of military order No. 119-030. Accordingly, petitioner argues that respondents' issuance of the revocation order rendered his removal from the DMNA Chief of Staff position void from the outset.

Based upon our review of the particular proof set forth in this record, we find that petitioner sufficiently established that military order No. 119-030 did, in fact, refer to the DMNA Chief of Staff position and that military order No. 238-008 revoked not only his transfer to ING, but also his removal from the DMNA Chief of Staff position. We further find that Supreme Court reasonably determined that respondents' revocation of military order No. 119-030 rendered it void from the time it was issued and, thus, it was arbitrary and capricious for respondents to deny petitioner the relief that he would have been entitled to had the transfer not occurred and he retained the position of DMNA Chief of Staff. We agree with Supreme Court that the granting of such relief "is not interfering with a military personnel decision. Rather, it is dealing with the aftermath of that decision and its effect on petitioner's position with the State." Therefore, we conclude that Supreme Court's decision is supported by the evidence and we cannot say it was an abuse of discretion.

Given our resolution of the above issue, it is unnecessary to resolve the remaining arguments raised herein.

Crew III, Peters, Spain and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.